Filed 11/26/19 (unmodified opinion attached)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| REGENCY MIDLAND CONSTRUCTION INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> LEGENDARY STRUCTURES, INC., <br><br> Defendant and Appellant. | B292602 <br><br> Los Angeles County <br> Super. Ct. No. BC629322 <br><br> **ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING** |

THE COURT:

The opinion filed November 7, 2019, in the above entitled matter is modified in the following manner:

1.  The following is deleted from the second to last paragraph on page eight:
    This is incorrect.

There is no change in judgment.

Appellant's petition for rehearing is denied.

---

BIGELOW, P.J.          GRIMES, J.          WILEY, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| REGENCY MIDLAND CONSTRUCTION, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> LEGENDARY STRUCTURES INC., <br><br> Defendant and Appellant. | B292602 <br><br> (Los Angeles County Super. Ct. No. BC629322) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Howard Halm, Judge.  Affirmed.

The Soni Law Firm, M. Danton Richardson, Leo E. Lundberg, Michael A. Long for Defendant and Appellant.

Law Office of Parham Hendifar, Parham Hendifar, Michael Diaz for Plaintiff and Respondent.

———————————————

A general contractor named Regency Midland Construction, Inc. hired subcontractor Legendary Structures, Inc. to do the concrete work for a new apartment building. Legendary quit halfway through. Regency and Legendary sued each other. Their dispute turns on the "retention" clause in the contract. The trial court properly granted summary judgment for Regency and dismissed Legendary's cross-claims. We affirm.

First is background. The deal was for about $2 million of concrete work for a new 71-unit apartment building. After Legendary quit, Regency got ANM Construction to finish the concrete job. Regency and Legendary fell to feuding about who owed whom what.

The fight was about retention. Regency withheld money from Legendary, citing the retention clause. Before Legendary quit, Regency had paid Legendary about $1 million for its work. That sum was 90% of Legendary's billings because the contract allowed Regency to withhold 10% of the amount due Legendary as security to ensure Legendary properly completed the job. Regency withheld from Legendary about $125,000, which we call the retention sum. Regency insisted on keeping that sum. Legendary demanded it. That is the main dispute.

The trial court granted Regency's motion for summary judgment, thus allowing Regency to keep the retention sum. Legendary appeals, saying the contract language entitles it to the sum.

Our review of this summary judgment ruling is independent. (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1249.) Summary judgment is not disfavored, but rather a good way to test the merits without the burdens of trial. (*Perry v. Bakewell Hawthorne, LLC* (2017) 2

2

Cal.5th 536, 542.)  The usual rules governing this procedure apply.  (See, e.g., Code Civ. Proc., § 437c, subds. (c) & (p)(2).)

This summary judgment appeal is purely a duel over contract interpretation, with no disputed issues of fact.  The key sentence in the contract between Regency and Legendary specified "Ten percent (10%) of Subcontractor's contract amount shall be withheld and will be released 35 days after completion of subcontractors work."  This 10% withholding created the retention sum.

Felix Frankfurter reputedly said the three rules of statutory interpretation are to read the statute, read the statute, and read the statute.  The same wise counsel applies to interpreting every text.  So we read read read the contract, which we now describe.

The contract is two pages, with a two page attachment.  It begins by listing the date as "AUGUST/13/2015."  (The oddity of this usage will later assume significance.)  The contract lists the lending bank and other preliminary information for the construction project.  It then announces the agreement is between Regency "hereafter called 'CONTRACTOR'" and Legendary "hereafter called 'SUBCONTRACTOR' . . . ."  It specifies the concrete work for Legendary to perform.  Next it states the total sum of $2,165,000 for the whole project is "TO BE PAID EACH MOTH [*sic*] ACCORDING TO THE PROGRESS OF THE WORK ACCORDING TO THE BANKS [*sic*] SCHEDULE."

We pause to emphasize that these preliminary lines of text contain odd stylistic usages and spelling and punctuation errors, some of which we have just noted.  There also is a varying and apparently random pattern of capitalization, with some words in

3

all capitals, some words with initial capitals, and some words with no capital letters. These points too later become significant.

Now comes the vital sentence: the retention clause. This clause is one of the primary recitals of the contract. It is one sentence long. It includes strikeout wording, a typed substitute insertion that replaces the strikeout words, and two sets of handwritten initials in the margin to show approval of the wording change.

Together with the strikeout words, the original retention clause reads: "Ten percent (10%) of Subcontractor's contract amount shall be withheld and will be released ~~30 days after final completion of the building~~."

The typed insertion for the strikeout is this: "35 days after completion of subcontractors [*sic*] work." We note the drafters' omission: there is no possessive apostrophe, either singular or plural. We count this as a simple error. "Subcontract*ing* work" would seem to be the phrase to use if one wanted to avoid an apostrophe. Below we return to the significance, or rather the insignificance, of this error.

The pair of handwritten initials is next to this insertion.

So the final and complete retention clause — striking the strikeout and inserting the insertion — reads like this, with our italics: "Ten percent (10%) of Subcontractor's contract amount shall be withheld and will be released 35 days after completion of *subcontractors* work."

The central dispute boils down to the meaning of "subcontractors" in this sentence.

There are many more words in the contract, including a so-called Article 13, but the retention clause is the key. The other words are either consistent or irrelevant.

4

We recite that key language (with our italics) once more, for coherence and emphasis: "Ten percent (10%) of Subcontractor's contract amount shall be withheld and will be released 35 days after completion of *subcontractors* work."

Legendary's argument is not crystalline but amounts to this: the italicized word "subcontractors" must mean *any* subcontractor, not just Legendary. Legendary itself did not complete the concrete subcontracting work, true, but the replacement subcontractor ANM did, so once ANM completed the work, Legendary should get the 10% Regency withheld from the payments for the work Legendary did before it abandoned the project. To do otherwise, Legendary protests, is "baseless and inequitable." In sum, then, Legendary says subcontractor should be interpreted to mean *any* concrete subcontractor, not Legendary in particular.

Regency's position, by contrast, is *subcontractor's* work means *Legendary's* work specifically. Legendary's work was the entire concrete job the contract specified — providing all the labor, materials, and equipment and ensuring the result was up to code and free of liens — which Legendary never completed. Thus Legendary is entitled to no further sums. The fact ANM substituted in to save the day does not matter, according to the language of the contract, says Regency.

Regency is right and so was the trial court's result.

As a matter of literal interpretation, Regency wins. The contract defines "SUBCONTRACTOR" as "Legendary Structures, Inc." Legendary's attempt to expand this definition to include ANM violates the contractual language.

There are two wrinkles, but they are inconsequential. The drafters made two textual errors. We repeat the key sentence

5

again, now with no italics:  "Ten percent (10%) of Subcontractor's contract amount shall be withheld and will be released 35 days after completion of subcontractors work."  First, as already noted, the drafters omitted the possessive apostrophe from the inserted word "subcontractors."  Second, the drafters did not place either "Subcontractor's" or "subcontractors" in all capitals, as appeared earlier in the document, thus creating a triple inconsistency in the use of capital letters in this word.  Legendary's lawyers do not make anything of these drafting flaws, and neither do we.  Given the pattern of spelling and capitalization errors elsewhere in this document, we ascribe these two errors to carelessness rather than intentionality.  These careless errors are inconsequential.

As a matter of purposive interpretation, Regency wins again.  Purpose can be illuminating when interpreting any written directive, because understanding what the parties were trying to accomplish by means of their words can help make sense of those words.  (See, e.g., *Falkowski v. Imation Corp.* (2005) 132 Cal.App.4th 499, 509–515 (*Falkowski*); Rest.2d Contracts, § 202, subd. 1 & com. c, pp. 86 & 88.)  The *Falkowski* opinion, for instance, exemplifies purposive interpretation when it rejected one party's proposed interpretation because that interpretation "fail[ed] to further the purposes" for which the contract was created.  (*Falkowski*, *supra*, 132 Cal.App.4th at p. 509.)

A sense of purpose can be especially important when careless errors plague a text.  If a purpose is clear, it can be an anchor in an error-ridden sea.

What was the purpose of the retention language?  What were the contract parties trying to accomplish by including this clause, which they amended so conspicuously with their

6

strikeouts and insertion?  No party offered extrinsic evidence.
We discern the contract's purpose from the contract's words.  (Cf.
*Falkowski, supra*, 132 Cal.App.4th at pp. 509–510 [neither side
offered extrinsic evidence; court relied only on contract language
to determine contractual purpose].)

The purpose of the retention clause was, as Legendary put
it in oral argument, to "ensure proper performance."  This
description is obviously correct.

There are many dimensions to proper performance.  Two
are to finish the job and to finish it swiftly.  But Legendary did
not finish swiftly.  It did not finish at all.  So it justly must suffer
the consequences of its contractual failing, which is loss of the
10% withholding.  The trial court's ruling is consistent with this
result and was correct.

In other cases with other facts, other aspects of proper
performance may be significant.  In those other cases, the parties
would do well to explain to judges the purpose of the contract
language and how that purpose does or does not fit those facts.

Legendary on appeal has formulated new arguments it
never presented to the trial court.  The arguments involve Civil
Code sections 3275 and 8810.  Legendary has forfeited the new
arguments.  Legendary claims its new arguments are strictly
legal and therefore we have discretion to consider them.  But
Legendary's reply brief at page 15 belies this "strictly legal" claim
because Legendary faults Regency for failing to offer *facts* in
response to the arguments Legendary never made in the trial
court.  And Legendary offers no good reason why we *should*
exercise discretion to depart from the usual and usually sound
forfeiture rule.

There is a second issue in this appeal. Legendary makes this second argument about attorney fees.

A prevailing party is entitled to recover attorney fees by contract. (*Butler-Rupp v. Lourdeaux* (2007) 154 Cal.App.4th 918, 923.) This contract had such a provision.

Trial courts determine who is the prevailing party based on an evaluation of whether a party prevailed on a practical level. Among the factors the trial court should consider is the extent to which each party has realized its litigation objectives. We review for abuse of discretion the trial court's assessment of which party prevailed. (*Olive v. General Nutrition Centers, Inc.* (2018) 30 Cal.App.5th 804, 824 (*Olive*).)

Legendary incorrectly argues the trial court erred by awarding attorney fees because Legendary, not Regency, was the prevailing party in the trial court. This is incorrect. Regency established Legendary was liable to it and not vice versa. Regency won a dollar judgment against Legendary. Regency prevailed. The trial court ruling was correct.

Legendary notes Regency won less than it requested. This fact can be pertinent in a damages-only trial, where the defendant *stipulates* to liability. (E.g., *Olive, supra*, 30 Cal.App.5th at pp. 822–829.) This is not a case like that.

**DISPOSITION**

The judgment is affirmed.  Costs to Regency.


                                        WILEY, J.


WE CONCUR:



        BIGELOW, P. J.



        GRIMES, J.